Good morning, Your Honors. May it please the Court. Jamila McEvong, on behalf of Petitioner Michael Trogdon, I would like to reserve two minutes for rebuttal please. I'm sorry, how much time? Two minutes. Can you raise the microphone? Thank you. I know, we go from very tall to very short, so it's helpful because when we record it, we can't get it otherwise. Thank you. Your Honors, as we laid out in our briefs, the ALJ committed multiple errors here in this case, both legal and factual, in denying Mr. Trogdon's application for disability benefits. I won't spend my time here today repeating all of those arguments, but would like to just focus on a couple of key issues that we think warrant reversal here. First is the ALJ's application of the incorrect legal standard when determining that the medical opinions conflicted with certain findings in the record, and the Commissioner has failed to respond to those points. And specifically, the ALJ reasoned that the doctor's opinions conflicted with Mr. Trogdon's inability to drive or his otherwise attempts to lead a normal life, and those just aren't legitimate reasons to discount that testimony. Well, didn't the ALJ, wasn't it that, well, he was driving three to four times a week, I think, was the testimony, and the finding was that that would be inconsistent? Wouldn't that be inconsistent with having seizures? Well, not quite so, Your Honors. So the mere Well, I hope he wasn't driving with seizures. That's, you know, that we're hoping for that. No, and in fact, he wasn't. In fact, he testified that if he ever felt a seizure coming on, he would need to take breaks, he would need to stop driving at that point. And that's one of the key reasons why just the mere fact of driving alone isn't necessarily indicative of a claimant's disability status. This Court has held time and time again that claimants can attempt to lead normal lives by participating in daily activities such as driving a car or taking a walk or doing routine chores around the household, but that doesn't necessarily mean that they can function properly in the workplace. And that was one of the key reasons that the ALJ discounted much of the testimony here, pointing to Mr. Trogdon's ability to drive, also pointing to alleged improvements with his treatment. And that, too, falls short of the standard that the ALJ should have applied in this case. Don't most of your arguments ask us to just interpret the facts differently than the administrative law judge? No, Your Honor. We're asking the Court to actually look at the reasons or look at the ALJ's analysis, which was incorrect. The ALJ actually did not engage in the appropriate analysis here. And looking at that alone, the Court can remand based on the ALJ's inappropriate findings without engaging in an entirely new analysis of the facts. Well, let's take Mr. Trogdon's wife as an example. You say that she testified to things differently than or to different abilities than Mr. Trogdon. But if we disagree with you and find that actually she testified to the same basic things as Mr. Trogdon, then there would be no harm, there would be, even if there were error, any error would be harmless, correct? Because the same reasons that the ALJ used to discount Mr. Trogdon would then also apply equally to Mr. Trogdon's wife. Assuming that the Court agreed that their testimony was similar, we would submit that there were some key differences in the testimony. But even so, the mere fact that there are just some overlapping or similarities wouldn't necessarily be a germane reason in and of itself to discount that testimony. The ALJ was still required. Well, I think, didn't the ALJ say regarding the wife that, okay, she said that her testimony largely mirrors Trogdon's allegations and then moved on? So, what more should the ALJ have done than saying, okay, you're saying the same thing as your husband and then discuss this later, why the husband's testimony was, why it may not be consistent with some of the medical evidence or whatever? So, what more did he have to say? Well, the ALJ actually, that actually doesn't actually engage with Ms. Trogdon's testimony, which was markedly different than Mr. Trogdon. She noted certain observations that Mr. Trogdon or that only someone who's observing Mr. Trogdon closely would be able to witness, including seeing him miss, forget to take his medications on repeated times, him having, falling out or not being able to pay attention for extended periods of times. That's unique testimony that someone only in a position of observing the claimant would be able to identify, and the ALJ did not consider that unique perspective that Ms. Trogdon had. So, let me ask you this. I think regarding your argument about SSR 83-12, where did you raise that argument before the administrative agency or the district court? I wasn't able to find that. Can you point me in the record where you preserved that issue? Yes, Your Honor. Mr. Trogdon, let's get the exact citation. Mr. Trogdon, I'm sorry, Mr. Trogdon, let's get the exact site for you. Well, if you don't have it at your fingertips, maybe when you're waiting to come back up on rebuttal, you could give me a specific record site. Yes, Your Honor. So, Mr. Trogdon actually challenged the vocational expert testimony and directly before the appeals council, and we'll get the exact site for you. But I think the key issue there is the commissioner argues that Mr. Trogdon needed to raise that at the hearing itself, but that's just incorrect standard under the law. Mr. Trogdon had to raise the issue at some point during the proceedings, and actually I have the site here, CAR 159. Mr. Trogdon actually objected to the ALJ's findings in the medical evidence, and that would be sufficient enough to encompass the V.E. testimony as well, the vocational expert testimony as well. You stated that the ALJ didn't provide germane reasons to discount the testimony of Mr. Trogdon's wife, but don't the Ninth Circuit decisions thus far say that the new regulations eliminated that requirement? I agree they're unpublished, but if you read the tea leaves, it looks like that's the understanding. Well, Your Honor, there's a considerable amount of discord on that point, but we would submit that the standard has not changed because there hasn't been any published decision that has come out changing that rule. So as it is today, the ALJ still needed to apply, you know, the germane reason standard as we indicated in our briefs. I see that I'm also coming up on two minutes. Would you like to reserve the balance of your time? Yes, I would like to reserve the balance of my time. Let me make sure my colleagues don't have any additional questions right now. No, thank you. We don't. So you can reserve the balance. Thank you. Good morning. Good morning. Katherine Watson for the Commissioner. Here's substantial evidence supports the ALJ's finding that Trogdon was not disabled. We discussed that the ALJ reasonably discounted Trogdon's subjective complaints. So I guess it's, I mean, obviously he has a lot of problems, which is not uncommon with many people, but so are we really looking at this more just going through the steps and seeing how the ALJ evaluated each of those? Whether the ALJ, I think Judge Koh made a point that we just, maybe we would have decided it differently, but the ALJ had reasons or what's your position? That is the correct standard. That's correct. So essentially substantial evidence means more than a mere scintilla of evidence. And looking at the ALJ's findings, that standard was met here. Turning to seizures, for example, the ALJ found that the seizures improved with treatment and there is ample evidence supporting that. In fact, on the alleged on-date, he had a seizure. He then took medications. He had no seizures at all for one year. He subsequently took the medication Vimpat. Treatment notes during the relevant period indicate that his seizures markedly improved with Vimpat. In March 2015, he indicated that he had, that his last seizure was two to three months ago. He had a seizure in March 2015, but after that he had no seizures at all, major or minor, through the date last insured and indeed for some years after the date last insured. So I know it's driving three to four times a week inconsistent with having severe seizures. Yes. And under this court's case law, it's an unpublished case, but Cross v. O'Malley, the unpublished decision, which was issued early this year, specifically dealt with the claimant with seizures. And it upheld the ALJ's reasons for discounting the claimant's subjective complaints. One of those reasons was his ability to drive in spite of the fact that he had seizures. I note here that he did testify that he usually was able to take precautions, but he also indicated that he wasn't always able to take precautions. And his treating physician, Dr. Harner, similarly indicated in her opinion that he was not always able to take precautions when he had seizures. The fact that both the treating physician as well as Trogdon indicated to the agency that he was still able to drive was sufficient to discount his testimony. Is the agency's position that if you're able to drive, you can't be disabled? No. That's not your position, is it? No. That is not the agency's position. But here we're looking at the context of seizures specifically. So, yes, there are cases where if a claimant is alleging pain, for example, the mere fact that he's able to drive would not be sufficient. But we also have cases such as Crossview, O'Malley, where the claimant is alleging seizures. And the LJ did find it notable that he nevertheless testified that he was still driving a few times a week. But he also had an accident. He was also hospitalized. He had an accident early in the relevant period. That is correct. I believe he was only hospitalized once for generalized tonic-clonic seizures. But generally speaking, he did not have debilitating seizures for a year or longer during — through the insured period, the date last insured. Did he ever distance himself and say, I shouldn't have been driving because of my seizures? I believe there were points in the record where he did indicate he wasn't driving, so there's some conflicting evidence there. But the LJ relied on his testimony to the agency, on his statements to the agency, both in his function report as well as at the hearing, where he did indicate that he was driving. Could you answer counsel's point that there's no published opinion that says the germane reasons requirement for discounting lay witness testimony no longer applies based on the new regulation? Yeah, so in our federal registrar, we do indicate with the new regulations that the ALJs are no longer required to evaluate lay witness testimony in every case. In two unpublished decisions, this Court has acknowledged that standard. So the most recent is in Kennedy v. O'Malley. That is similarly an unpublished decision. But this Court in that case did indicate that under the revised regulations, ALJs are no longer required to discuss their findings regarding the lay witness testimony. That being said, as this Court has noted, the ALJ did discuss and consider those findings. The ALJ specifically discussed how the nonmedical evidence largely mirrored drugged and subjective complaints. In every Social Security case, lay witnesses generally do have a unique perspective. But here, the lay witness described limitations that largely mirrored those that Trogdon described. And under this Court's rulings, for example, Molina v. Estru, when the lay witness testimony is similar, largely mirrors the claimant's testimony, then there is no harmful error, no basis for reversal, because the ALJ's for discounting the claimant's testimony would apply with equal force to nonmedical statements. So the fact that it's only in not published, is there — I mean, obviously, people want publication pursuant to — they want it to be published the way that it would be consistent with their view of the case. Is this something — should there be a published opinion here to address lay witnesses saying you don't have to — you don't have to address them consistent with your regulations? Certainly, we would have no objection to a published opinion on that case. The revised regulations are — they came out in 2017, but the cases coming before the Appeals Court on revised regulations are relatively new. Our Federal Registrar, as I noted, does expressly state that ALJs are not required to address nonmedical source statements in every decision, although they can. And as we said, we have two unpublished opinions, but you're correct, we don't have a published opinion yet on that. What should we do with the situation where, although the — excuse me — ALJ is not required to discuss lay witness testimony, he or she does so, and it's in conflict with other testimony? And what — do we weigh that testimony the same as any other testimony? So the ALJ is not required — and please correct me if I'm not answering your question — the ALJ is permitted to do so in some cases. In this case, the ALJ found that the nonmedical source statement or lay witness testimony largely mirrored claimant subjective complaints. And under this Court's holdings, for example, in Molina v. Strew, when lay witness testimony largely mirrors a claimant's subjective complaints, the ALJ's reasons for discounting the claimant's subjective complaints, so long as they're valid, would apply similarly to the lay witness testimony. So that is sufficient under this Court's standards to prevent any reversal on that issue. Have all the unpublished cases thus far just rested on harmless error, that there was no harmless error? I don't know. I believe in Kennedy — I mean, there are two unpublished cases prior and then Kennedy v. O'Malley. And prior, it said it is clear under the revised regulations that ALJs are no longer required to discuss lay witness testimony in their decisions. Similarly, in Kennedy v. O'Malley, the Court similarly indicated that under the revised regulations, ALJs are no longer required to discuss lay witness testimony. I believe — I don't remember if the — if in those cases they went on to evaluate on the merits or if they also found harmless error. I believe they did. So I believe it was a both-and situation. And it's Frank Stevens v. Kijikazi. Excuse me? Stevens v. Kijikazi also addressed this issue. I was on that panel. Got it. Yeah. So there's been a few unpublished. Those are the two that I know about where the Court expressly did indicate ALJs are no longer required to discuss non-medical source statements. So as your time is dwindling, I want to make sure — do my colleagues have any additional questions? No, thank you. We don't have additional questions. You have a minute and 30 seconds left. If there are no additional questions, I'd simply state that more than a mere scintilla of evidence here supports the ALJ's findings with regard to the subjective complaints, the treating physicians. I'd also finally just note under this Court's holdings for forfeiture, for example, in Independent Towers v. Washington, argues must be raised distinctly and specifically so a bare assertion of error does not preserve an issue. That is what we have here in C.A.R. 159. A generalized assertion that the ALJ's findings are not supported by medical evidence is not sufficient to preserve it. But regardless, under SSR-12, I note that that ruling was designed to discuss circumstances when ALJs must consult a vocational expert. Because under our regulations, either we can consult a vocational expert or the ALJ can rely on our grids. In situations where there's very limited or unusual standing or walking, that is a situation where vocational expert testimony is required under that ruling, and that is what the ALJ did here. So did the SSR-83-12, I asked the other side to give me a site where that was raised. Are you aware of any site in the record where it was raised? I am aware of no site in the record where it was raised. It was not raised at the administrative hearing, and C.A.R. 159, again, as noted by opposing counsel, that was a generalized or a bare assertion of error. There was no specific allegation that that site was not complied with. Okay, thank you. Thank you. Just a couple points, Your Honor. The Commissioner spent a lot of time discussing the Cross O'Malley case and how that distinguishes- Do you have a site for me? Yes, the Cross O'Malley case, that's 2024, Westlaw 68427. We also discussed- Well, you're giving a case site, right? I mean, do you have a site in the record where you raise an argument before the administrative agency or the district court regarding 83-12? Oh, regarding that, apologies, Your Honor, I was discussing a different point. The best site we have for that is C.A.R. 159, Your Honor, and the Commissioner is correct that that was a general argument, that was a general challenge that Mr. Trogdon raised. Okay. If that's the site, that's fine. Yeah, that's the site, and we would argue, and we would just contend there that this Court, you know, has a discretion to, you know, consider issues of waiver. At first impression here, the parties have already briefed this issue fully, so there wouldn't be much prejudice to the Court considering the issue at this point. But to the point about Mr. Trogdon's ability to drive, the Cross O'Malley case is distinguishable on these facts, as we discussed at page 20 to 21 of our reply brief. In that case, the Court actually made specific findings about the testimony about the claimant's ability to drive being inconsistent with the overall treatment notes. And here, there's just no justifiable basis on how Mr. Trogdon's ability to drive three to four times per week, whenever and however he chooses to do so, is actually inconsistent with the other evidence in the record. And with respect to, just quickly on the germane reasons point, Your Honor, we would, as the Court has noted, there has not been a published decision on that point, but, you know, even if the Court applies that standard, the ALJ still was felt, still was required to consider Ms. Trogdon's testimony and not just discount it or waive it off, simply because there were some overlaps with Mr. Trogdon's testimony. The ALJ should have considered the ways in which the testimony differed. And as we outlined in our brief, there are a few specific, unique perspectives that Ms. Trogdon had that Mr. Trogdon would not have that the ALJ should have considered. All right. Thank you for your argument. Thank you both for your argument. Thank you for the pro bono work that you're doing. And we appreciate this matter, and it will be submitted as of this date. Thank you.
judges: TASHIMA, CALLAHAN, KOH